# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30069

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

v.

ANTHONY DARTEZ,

        Defendant–Appellant.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:07-CR-20009-1

---

Before JONES, SMITH, and PRADO, Circuit Judges.

PER CURIAM:*

        Anthony Dartez appeals the revocation of his supervised release, asserting that his confrontation right was violated when the district court did not allow him to cross-examine United States Probation Officer Gregory Clark during his revocation hearing. For the reasons given below, we AFFIRM.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30069

## I. BACKGROUND

On November 14, 2007, Anthony Dartez pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He was subsequently sentenced to 120 months of imprisonment and 10 years of supervised release. Dartez's term of supervised release began December 29, 2015. One supervised release condition prohibited Dartez from "hav[ing] access to any computer that is capable of internet access without specific permission of the probation officer." He was also required to reside in a halfway house and abide by that facility's rules.

On June 17, 2016, Dartez's probation officer, Officer Gregory Clark, filed a petition for a warrant and revocation hearing, alleging that Dartez possessed a cell phone and ignored orders from the halfway house's staff members. The district court found that Dartez had violated the conditions of his supervised release, but deferred action on the petition. Instead, the court admonished Dartez to comply with the rules of the halfway house.

On December 7, 2016, Officer Clark filed a second petition for a warrant and revocation hearing. The petition alleged that Dartez violated the conditions of his supervised release by: (1) failing to attend mandatory classes at the halfway house; (2) failing to report his movements to the halfway house; (3) possessing unauthorized cell phones; (4) possessing a cell phone on November 18, 2016, that was connected to free wireless internet; and (5) possessing a portable gaming system, a PlayStation Portable, that was capable of connecting to the internet. Most relevant here, Officer Clark personally observed the November 18 incident. On that day, Officer Clark visited the Dairy Queen where Dartez was working. Upon arriving, he noticed Dartez sitting near a dumpster behind the Dairy Queen, holding a cellular phone. Officer Clark inspected the cell phone and determined it was connected to the internet.

2

No. 17-30069

On January 24, 2017, the district court conducted a revocation hearing on Officer Clark's second petition. Dartez denied the petition's allegations and requested an evidentiary hearing. The Government began its presentation of evidence by proffering the testimony of Officer Clark because of the district court's policy of not "put[ting] the probation officer under oath." In its proffer, the Government summarized the allegations set forth in the revocation petition and emphasized that Officer Clark "has specific information that he has direct knowledge of," particularly his observations at Dairy Queen. Dartez objected to the proffer as violating his constitutional and statutory right to confront an adverse witness.

The district court and Dartez's counsel then engaged in a lengthy exchange over whether he could cross-examine Officer Clark. The court noted that Officer Clark was an eyewitness to one of the violations, but explained that its policy of not placing probation officers under oath derived from the position that a probation officer is "an arm of the court" who "provides to [the] Court information of a variety of natures" and "monitor[s] [the supervisee] and report[s] to the Court as to what he or she has found." From this, the court reasoned that Officer Clark was not an "adverse witness" within the meaning of Federal Rule of Criminal Procedure 32.1(b)(2)(C). The district court noted the "relaxed" evidentiary rules of revocation hearings and emphasized that the "interest of justice" provided grounds for prohibiting cross-examination of a witness in a revocation hearing.

The district court then proposed an alternative to cross-examination: the court would assist defense counsel in eliciting information from Officer Clark by posing questions to the probation officer and by letting counsel ask questions "in an informal fashion." The district court noted that "in 26 years [it had] never allowed [cross-examination of a probation officer]" and stated, "[w]hat I'm not going to let you do is cross-examine him under oath about how

he did his job unless the Court tells me I must." Dartez's counsel stated he was "prepared to proceed the way [the court] would like to today" and appreciated the opportunity to present his argument.

The district court then began questioning Officer Clark, which occurred as follows. Defense counsel would ask the court a question, and then the court would repeat the question to Officer Clark. At times, the court would pose its own questions to Officer Clark. At other times, the court would decline to ask Dartez's questions because it believed the information sought was not relevant to its decision. Defense counsel also asked a few questions directly to Officer Clark. During this initial exchange, Officer Clark was not placed under oath.

After a brief recess, the district court retroactively placed Officer Clark under oath, stating "[h]e was under oath when you asked those questions, albeit retroactively, but I think that probably, for these purposes, it is sufficient, and you can get your detail." At this time, defense counsel noted that his intent in questioning Officer Clark was "to provide more details in context about what's contained in the reports in ways that . . . would benefit [Dartez]." The court responded that cross-examination was not the exclusive means to obtain information about the violations because Dartez could have suspended the hearing to gather additional information or spoken with Officer Clark before the proceeding. The court also explained Fifth Circuit and Supreme Court precedent as to the confrontation rights of a parolee facing revocation of supervised release. The questioning of Officer Clark then resumed.

After the questioning ended, the district court explained with regards to Dartez's objection to the Government's proffer:

> This Court also, in making the specific findings that good cause exists not to allow any further confrontation than that which has already been allowed, in the fact that the defendant claimed . . . that what was desired here was additional detail and context for mitigation. That information could have been obtained readily,

4

openly, from the probation officer because of the open-door policy
as to the probation officers in the Western District of Louisiana.

The district court continued:

> Therefore, this Court finds that there is good cause not to go
> beyond what has already happened here because of the
> countervailing consideration of the interests of justice if we change
> the nature of a revocation proceeding. Therefore, the Court has
> ruled on that point. Objection is noted.

The district court then heard the testimony from three staff members of the
halfway house, and the defense recalled one of those witnesses. Dartez also
made a personal statement.

The district court found by a preponderance of the evidence that Dartez
had violated the conditions of his supervised release. The advisory guidelines
range placed Dartez at four to ten months of imprisonment, but the court
imposed a one-year term of imprisonment and a nine-year term of supervised
release. Judgment was entered on January 27, 2017. Dartez filed a timely
notice of appeal.

## II. DISCUSSION

We have jurisdiction "to review the revocation of a defendant's
supervised release pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291."
*United States v. Justice,* 430 F. App'x 274, 277 (5th Cir. 2011). "A claim that
the district court violated a defendant's right to confrontation in a revocation
proceeding is reviewed de novo, subject to harmless error analysis." *United
States v. Jimison*, 825 F.3d 260, 262 (5th Cir. 2016) (citing *United States v.
Minnitt*, 617 F.3d 327, 332 (5th Cir. 2010)).

"The defendant's rights in a revocation hearing include a qualified right
to confront and cross-examine adverse witnesses." *United States v. Grandlund*,
71 F.3d 507, 510 (5th Cir. 1995). This confrontation right "flows from the Due
Process Clause" and "can be overcome by a showing of 'good cause.'" *Jimison*,

No. 17-30069

825 F.3d at 262 (quoting *Minnitt*, 617 F.3d at 332–33). "Determining whether good cause exists requires 'weigh[ing] the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation.'" *Id.* (alteration in original) (quoting *Minnitt*, 617 F.3d at 333). "[A] district court is required to make 'an explicit, specific finding of good cause' for not allowing confrontation of a particular witness." *Id.* (quoting *Grandlund*, 71 F.3d at 510 n.6).

Dartez argues on appeal that the district court violated his right to confrontation in his supervised release revocation proceeding because the district court did not allow him to cross-examine his probation officer, Officer Clark, whose testimony introduced facts detrimental to his case.[1] Dartez argues that his "interest in cross-examining Probation Officer Clark far outweighed" the Government's interest and that "the district court's failure to make a sufficient finding of good cause is not harmless error."

It is an open question as to whether Dartez's probation officer is an "adverse witness," triggering Dartez's right "to confront and cross-examine" him.[2] *See Morrissey v. Brewer*, 408 U.S. 471, 487 (1972). Nevertheless, we need

---

[1] The Government argues that Dartez abandoned his objection when he acquiesced to the district court's modified questioning procedure. "Waiver is the 'intentional relinquishment of a known right.'" *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). The record here does not indicate that Dartez intentionally relinquished his confrontation right. Indeed, Dartez's counsel objected at the outset when the Government proffered Officer Clark's testimony. Dartez's counsel also engaged in a lengthy exchange with the district court and responded to the court's initial assessment that cross-examination was unnecessary. Furthermore, the district court acknowledged even after implementing its alternative questioning that Dartez's objection was "noted."

[2] If he was an adverse witness, then the district court's policy of not placing probation officers under oath would not be sufficient to find good cause for preventing cross-examination existed. "We cannot sanction a finding of good cause based on the mere recitation of a blanket agency policy without any assessment of the strength of the parolee's competing interest in examining the witness." *Williams v. Johnson*, 171 F.3d 300, 306–07 (5th Cir. 1999) (footnote omitted). The balancing of interests requires a "particularized inquiry." *See id.* at 306.

not reach this question because any potential failure by the district court in denying Dartez's right to confront Officer Clark would be harmless. *See Justice*, 430 F. App'x at 280 (considering whether the error was harmful). First, the Dairy Queen incident observed by Officer Clark did not trigger mandatory revocation. *Cf. Jimison*, 825 F.3d at 264 ("[A]ll this should be considered in the context of the heightened interest in confrontation that a defendant has when facing violations like the ones here that result in mandatory revocation"); *Justice*, 430 F. App'x at 280 (finding harmful error when the out-of-court statements were the only evidence linking defendant to a Grade A violation that required mandatory revocation of supervised release). Moreover, the Dairy Queen incident was not Dartez's only violation. Dartez failed to attend classes at the halfway house, possessed unauthorized cell phones, and possessed an internet-enabled portable gaming system, all of which contributed to the district court's decision. Testimony from other witnesses and evidence presented at the hearing substantiated these violations. Finally, Dartez articulates no specific inquiries that were foreclosed by the district court's alternative questioning. In sum, there were multiple other violations of the terms of Dartez's supervised release, and these were sufficient to justify the revocation.

## III. CONCLUSION

For the foregoing reasons, we hold any error by the district court was harmless. We therefore AFFIRM the district court's revocation of Dartez's supervised release.